# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

**KENNETH L. BASTIAN,** *et al.,*

      **Plaintiffs-Appellants,**

v.

**HOUSEHOLD FINANCE CORP.,**

      **Defendant-Appellee.**

**Civil Action No.  AW-04-3693**

## MEMORANDUM OPINION

This appeal arises from an Order of the United States Bankruptcy Court for the District of Maryland ("bankruptcy court") dissolving its Order to Show Cause and denying Appellants' Motion to Stop Foreclosure Sale. Because this Court has reviewed the entire record and has carefully examined the parties' submissions, "the decisional process would not be significantly aided by oral argument." BANRKR. R. 8012 (2005). For the reasons that follow, this Court affirms.

### FACTUAL & PROCEDURAL BACKGROUND

On November 2, 2000, Kenneth and Buntricia Bastian (collectively, "the Debtors") filed a voluntary petitioner under Chapter 13 of the Bankruptcy Code. On January 2, 2001, Household Finance Corporation, III ("Household") filed a Motion for Relief From Stay. On March 23, 2001, a Consent Order, between Household and Debtors, Modifying Motion for Relief from Stay was entered on the bankruptcy court's docket.

Debtors defaulted under the terms of the Consent Order on three different occasions. In compliance with the Consent Order, Household filed the first Affidavit of Default on July 9, 2001. A second Affidavit of Default was filed on December 6, 2001. The third and final Affidavit of Default was

filed on June 2, 2004. At this point, the Debtors had no further rights under the terms of the Consent Order.

On July 7, 2004, Household initiated foreclosure proceedings, and a foreclosure proceeding was scheduled for Friday, August 27, 2004. On July 14, 2004, Kenneth Bastian contacted Mark Swiatek ("Swiatek"), Household's account representative, and advised him that the sum of $5,400.00 would be paid before July 30, 2004 to stop the foreclosure. On July 21, 2004, Swiatek sent a letter to the Debtors ("First Letter"), advising the Debtors that he would accept the sum of $5,400.00 and stop the foreclosure if paid by July 30, 2004. The Debtors did not pay the $5,400.00 amount by the required July 30, 2004 date.

On August 13, 2004, Swiatek contacted Kenneth Bastian and advised him that his property was scheduled for foreclosure sale on August 27, 2004. Bastian informed Swiatek that Bastian was trying to sell his house, and that the realtor handling the sale of the property would be in touch with Swiatek. On August 24, 2004, Cheryl Ann Johnson ("Johnson"), the real estate agent working on behalf of the Debtors, contacted Swietek, and was advised that the foreclosure sale would be canceled if the Debtors paid, and Household received, the sum of $7,200.00 on August 26, 2004 by 5:00 p.m. The following day, counsel for Household faxed a letter to Johnson reiterating this offer ("Second Letter").

On August 26, 2004, counsel for the Debtors contacted counsel for Household at 4:00 p.m. to advise that her client was at Andrews Air Force Base and could not make it to Household's office by 5:00 p.m. Counsel for Household reiterated that 5:00 p.m. was the deadline. The Debtors allege that Kenneth Bastian arrived at Household's office with the payment a "few moments" after 5:00 p.m., but the door was locked and no one was present. That same day, the Debtors filed an Emergency Motion to Stop the

2

Foreclosure.

On August 27, 2004, the foreclosure sale took place as scheduled. The Debtors' property, appraised for $400,000.00, was sold to a third party for $272,000.00. That same day, the bankruptcy court, acting *sua sponte*, issued an Order to Show Cause on Household.

On September 2, 2004, the Court held a hearing on the Order to Show Cause and more specifically, why the August 27, 2004 foreclosure should be nullified. At the oral hearing, Debtors argued that the First Letter and Second Letter extending the dates and lowering reinstatements amounts constituted a contract, therefore the covenants of good faith and fair dealing applied. In rejecting this argument, the bankruptcy court found the First Letter and Second Letter were not a "contract" but rather an "accommodation" to the Debtors. The bankruptcy court noted that Household does not benefit from the current situation: "Indeed, in all likelihood, it would have been as well off, if not better off, were the sale [between the parties] to have gone through." Nevertheless, the bankruptcy court concluded that as the "rights of a third party have intervened," the Order to Show Cause had to be discharged and the Motion to Stop Foreclosure denied. A Notice of Appeal was timely filed.

## STANDARD OF REVIEW

A district court, sitting as an appellate court in bankruptcy, reviews decisions of law de novo, and may not set aside a bankruptcy court's findings of fact unless they are clearly erroneous, BANKR. R. 8013; First Nat'l Bank v. Stanley, 66 F.3d 664, 667 (4th Cir. 1995). A finding of fact is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

**DISCUSSION**

I.   Whether a contract was entered into by the Parties?

The Debtors contend that the bankruptcy court erred in finding and concluding that a contract between the parties was not entered into to reduce the amount required to cancel the foreclosure. The Debtors argue that Household agreed to waive its rights under the loan agreement between the parties, embodied in the Consent Order, by agreeing in the First Letter to take the sum of $5,400.00 on or before July 30, 2004, and agreeing in the Second Letter to accept $7,200.00 on or before August 26, 2004. Specifically, the Debtors contend that the First Letter and Second Letter collectively represent a novation of the loan agreement under the Consent Order, and as a consequence of entering into the Consent Order, Household should have been estopped from conducing the foreclosure sale of the Debtors' property. This Court cannot agree.

In a diversity action, such as this one, the Court turns to Maryland law for guidance on a waiver of legal rights. A waiver is the "intentional relinquishment of a known right, or such conducts as warrants an inference of the relinquishment of such right, any may result from an express agreement or be inferred from the circumstances." Holder v. Maaco Enters., 644 F.2d 310, 312 (4th Cir. 1981). A mere affirmance of a contract, however, does not imply a waiver. Id.

In Maryland it is well-settled that a "novation" is a new contractual relation made with intent to extinguish a contract already in existence. Mercantile Club, Inc. v. Scherr, 102 Md. App. 757, 772 (1995). "It contains four essential requisites: (1) a previous valid obligation; (2) the agreement of all parties to the new contract; (3) the validity of the new contract; and (4) the extinguishment of the old contract, by the substitution of the new one." Holder, 644 F.2d at 312 (citing I.W. Berman Props. v. Porter Bros, Inc.,

4

276 Md.1, 7 (1975)). In the instant action, it is undisputed that the loan documents and Consent Order were a previous valid obligation. The record also shows that the Debtors and Household were parties to the loan documents and Consent Order. The rub in this case, however, is whether the First Letter and Second Letter constituted a valid new contract or a mere affirmance of the original loan documents and Consent Order.

The Maryland Court of Appeals decision in Bargale Indus., Inc. v. Robert Realty Co., Inc., 275 Md. 638, (1975) is instructive. In Bargale, debtors had borrowed funds from a realtor, which were secured by a mortgage upon the land, to build a planned industrial building. Id. at 639. Later, the debtors again approached the realtor with a request that he assist in obtaining a mortgage. Id. at 639-40. Settlement negotiations were entered into, and the parties discussions and understandings were culminated in a letter of authorization offering to pay the realtor a fee in the event that the debtors secured a mortgage loan of $200,000.00. Id. at 640. The realtor went to work, and as a result of his efforts, secured a mortgage in the amount of $193,000.00. Id. at 640-41. The debtors accepted the mortgage. Id. at 641. Upon learning that the costs of construction had increased, however, the debtors subsequently disclaimed any liability to the realtor on the grounds that the commitment for $193,000.00 was less than the amount specified in the letter of authorization. Id. at 642.

The trial court found that the requirement of a minimum mortgage loan of $200,000.00 was *waived* by the acceptance by the debtors accepting the commitment in the amount of $193,000.00. Id. at 642 n.3. The trial court's finding was based on the theory that at the time of the $193,000.00 commitment, there was in effect a novation of the understanding of the parties. Id.

On appeal, the debtors challenged the trial court's finding that a "novation of the understanding of

the parties resulted from the 'waiver' by the [appellants] of a minimum mortgage payment." Id. at 643. The Court of Appeals overturned the trial court's decision. The Court of Appeals found that the letter of authorization between the debtors and the realtor constituted a "unilateral contract," and "only upon compliance with both conditions precedent specified therein could a valid existing contract have come into existence between the parties." Id. 646-47. Therefore, the Court of Appeals concluded that there was "no prior valid existing contract between the parties, there could be no creation of a substitution of a new contract, and hence, no 'novation.'" Id. at 647.

As applied to the instant case, the First and Second Letters clearly embody a unilateral contract as Swiatek promised that the foreclosure sale would be canceled only if the Debtors performed by paying the amounts specified in the letters. Thus, similar to Bargale, "only upon compliance with both conditions precedent specified therein could a valid existing contract have come into existence between the parties." 275 Md. at 646-47. As applied here, although Swiatek undertook a commitment to cancel the foreclosure of the Debtors' property, his performance, pursuant to the First and Second Letters, would not have resulted in a binding contract until the Debtors had performed the conditions precedent. The condition precedent to Swiatek cancelling foreclosure in the First Letter was for the Debtors to pay the sum of $5,400.00 on or before July 30, 2004. The condition precedent to Swiatek cancelling the foreclosure in the Second Letter was for the Debtors to pay the sum of $7,200.00 on August 26, 2004 by 5:00 p.m. The record shows no evidence that the Debtors made either of the required payments by the deadline specified. In the absence of such evidence, this Court cannot find a prior valid existing contract between the parties, and therefore a novation was never created. Therefore, this Court concludes that the bankruptcy court did not err, as a matter of law, in concluding that the parties did not effect a contract.

II.     Discharge of Show Cause Order & Denial of Motion to Stop Foreclosure

The Debtors also allege that the bankruptcy court committed clear error in issuing an Order to Show Cause with language suggesting a preliminary assessment of outrageous conduct. The Debtors argue that they have been "deprived of their day in court" by the bankruptcy court issuing a "sharply worded preliminary finding of rebuke," only to later retreat and discharge the Order to Show Cause upon finding a subsequent finding that a third party purchased the property. This Court cannot agree.

The language of the contested Order to Show Cause states, in pertinent part:

> Upon consideration of the annexed Emergency Motion to Stop Foreclosure Sale, and after due consideration of the *alleged* outrageous conduct on the part of Household . . . [Household is ordered to show cause] why the foreclosure sale to be conducted August 27, 2004, should not be nullified and appropriate remedies imposed.

(emphasis added). As an initial matter, the Court finds that the language of the Order to Show Cause clearly states that based on the "outrageous conduct" of Household was "alleged" in Debtors' Motion to Stop Foreclosure Sale. Debtors have cited no authority demonstrating, nor can it reasonably be so, that a mere allegation implies a judicial finding of fact. Indeed, the function of an Order to Show Cause is not to make preliminary findings of fact, but rather to provide a defendant with notice of a suit. See Prince George's County v. Veira, 340 Md. 651, 662 (1995) ("[L]ike [a] summons, an executed show cause order provides the defendant with notice that an action has been instituted, prescribes the time in which a response is to be made, and, at least by implication, apprises the defendant of the consequences of failing to respond.").

Moreover, it cannot reasonably be argued that the bankruptcy court erred in discharging an order based on one side's version of the facts. Indeed, the wisdom of the bankruptcy court to hold a hearing

7

subsequent to issuing the Order to Show Cause demonstrates that the bankruptcy court was well aware that it only had a one sided perspective of the facts and that oral argument may be necessary to flesh out the remaining facts. After a hearing was held, the bankruptcy court was made aware of the following: (1) that Debtors had been afforded the opportunity to avoid foreclosure during the month prior to the sale, and had failed to act on that opportunity; (2) that a representative of Household contacted Kenneth Bastian two weeks prior to the sale and was advised that the realtor would contact Household; (3) that the realtor did not contact Household until three days prior to the scheduled foreclosure sale; and (4) that the terms of the offer to cancel the sale were communicated verbally and in writing to the Debtors' realtor, including the 5:00 p.m. deadline to receive the payment; and (5) that Household disputed the assertion that Kenneth Bastian had arrived a "few minutes late" at the office of Household's counsel. Only after receiving these additional facts did the bankruptcy court discharge the Order to Show Cause. Therefore, this Court cannot conclude that the bankruptcy court committed "clear error" in discharging the Order to Show Cause.

## CONCLUSION

For the foregoing reasons, the Judgment of the bankruptcy court is AFFIRMED. An Order consistent with this Opinion will follow.

May 6, 2005　　　　　　　　　　　　　　　　　　　　　　　/s/
Date　　　　　　　　　　　　　　　　　　　　　Alexander Williams, Jr.
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge